CHARLES ST. PIERRE ET AL. *v.* ALBERT J. SOLNIT, COMMISSIONER OF MENTAL HEALTH
(15114)

PETERS, C. J., and CALLAHAN, BERDON, NORCOTT and PALMER, Js.

Argued March 22—decision released June 6, 1995

*William B. Wynne,* with whom was *Edward Mattison,* for the appellants (plaintiffs).

*Gregory T. D'Auria,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Thomas J. Ring* and *Richard J. Lynch,* assistant attorneys general, for the appellee (defendant).

PER CURIAM. The dispositive issue in this appeal is whether a complaint seeking injunctive relief from a

departmental policy becomes moot when the department amends the challenged policy to grant the complainants the substantive relief that they seek. The plaintiffs, Charles St. Pierre, John Franklin, Adam Duperry, Rose Dumond, Beth Stein, Howard Lee, Roger Lundenberg and Anthony Dyous, filed a one count complaint alleging the invalidity of a nonsmoking policy promulgated by the defendant, Albert J. Solnit, commissioner of mental health (commissioner). The plaintiffs alleged that their well-being as patients and residents of Norwich Hospital was adversely impacted by a new policy of the commissioner, Policy Statement No. 51, which permitted smoking only outside premises occupied by the department of mental health (department), such as Norwich Hospital.[1] The trial court dismissed the plaintiffs' complaint on the ground that they had failed to exhaust their administrative remedies. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We dismiss the appeal as moot.

After the plaintiffs had filed their complaint in the trial court, the commissioner revised his policy and so notified a representative of the plaintiffs in a letter dated February 11, 1993.[2] The revised policy permits

[1] Commissioner's Policy Statement No. 51, entitled "Smoking," provided: "There is strong scientific evidence that tobacco smoke causes cancer and other diseases in human beings. There is also evidence of increased risk to the nonsmoker who breathes in secondary smoke.

"Therefore, to protect the health, comfort and safety of all concerned, effective January 1, 1993, the smoking of cigarettes, cigars or pipes is absolutely prohibited in *all* state-owned or leased properties occupied by the Department of Mental Health [department]. There shall be no designated smoking areas on these premises. Smoking by staff, visitors and patients/clients will be permitted only outside the buildings or outside the [department] premises, if the building is shared with other lessees." (Emphasis in original.)

[2] The letter from the commissioner to Edward Mattison, the executive director of the Connecticut Legal Rights Project, Inc., which represents

smoking inside buildings by persons like the plaintiffs, who are inpatients in mental hospitals. Despite some administrative mistakes in the implementation of this revised policy, the commissioner, through his deputy, reiterated his adherence thereto in an affidavit dated June 29, 1993.[3]

On its face, the commissioner's issuance of a revised policy renders the plaintiffs' complaint moot. " 'It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which

the plaintiffs in the present litigation, states in relevant part: "[The department of mental health (department)] will be a No Smoking agency for all employees, visitors and clients not residing in a [department] inpatient setting.

"For inpatients at [department] hospitals, the requirement is that each hospital develop its own action plan to reach the goal of the [Joint Commission on the Accreditation of Healthcare Organizations] accreditation requirement for January 1, 1994. Hospital action plans will include: Documented patient participation; equal access to regulated smoke breaks; protection of nonsmokers from passive smoke exposure; and education and supportive measures for patients who wish to quit or reduce their smoking habit.

"Outside accommodations must provide shelter from inclement weather, reasonable access and adequate ventilation and space."

Norwich Hospital, at which the plaintiffs are inpatients, promulgated the revised smoking policy on February 19, 1993.

[3] The affidavit of Kenneth Marcus, deputy commissioner of mental health, acknowledged that the central office of the department erroneously had sent out a communication on the department's smoking policy that purported to reinstate the superseded Policy Statement No. 51. He averred, however, that "[t]he revised smoking policy, which permits smoking in buildings by inpatients, has been in effect in Department facilities since early (January/February) 1993 and continues to be in effect at this time. The Department does not anticipate reinstatement of the May 1, 1992 Policy Statement No. 51 or another amendment to the revised policy which would prohibit smoking by inpatients in Department buildings. . . .

"The smoking policy in Department facilities continues to be as expressed in the amended Policy Statement No. 51, i.e., smoking by inpatients in Department facilities is allowed as expressed in a February 11, 1993 letter to attorney Mattison from Commissioner Solnit."

no practical relief can follow.' " *Perry* v. *Perry*, 222 Conn. 799, 803, 611 A.2d 400 (1992); *Moshier* v. *Goodnow*, 217 Conn. 303, 307, 586 A.2d 557 (1991); *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 571, 499 A.2d 1158 (1985). "[T]he repeal of an offending law or regulation or the cessation of a challenged activity [renders] an action to enjoin its enforcement moot . . . [in the absence of a claim] for redress of an injury occurring while the enactment was in force." (Citations omitted.) *Connecticut State Medical Society* v. *Commission on Hospitals & Health Care*, 223 Conn. 450, 455, 612 A.2d 1217 (1992); *Roy* v. *Mulcahy*, 161 Conn. 324, 328, 288 A.2d 64 (1971). The plaintiffs' complaint sought only injunctive relief and did not state a claim for redress of an injury during the period when the now superseded policy was in force.

Although the plaintiffs acknowledge that the commissioner's revised policy provides them with the substantive relief that they sought in their complaint, they nonetheless maintain that their appeal is not moot. Without challenging the contents of the revised policy, they claim that they continue to have the right to challenge the validity of the superseded Policy Statement No. 51, which they claim was an unadopted regulation that was issued in violation of the Uniform Administrative Procedures Act, General Statutes §§ 4-166 through 4-189.

Specifically, the plaintiffs contend that their appeal should be afforded a plenary hearing because it presents a case that is "capable of repetition, yet evading review." As we recently have clarified, "for an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases

raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995). Even if we assume, arguendo, that the policy were to be reinstated, there is no reason why the issue presented here could not be resolved at that time, because a policy of this type is not likely in the substantial majority of cases to become moot before review can be completed. Accordingly, this exception to the mootness doctrine is inapplicable.

The plaintiffs argue that their appeal nonetheless merits review because, in their view, an injunctive order is required to forestall the possibility that the commissioner unilaterally will reinstate the superseded smoking policy without affording them an opportunity to be heard on its merits. Voluntary cessation by a party free to resume the challenged activity, of course, will not automatically shield a claim for an injunction against that very activity from review. In light of the representations in the record by the deputy commissioner[4] and at oral argument in this court, however, we are persuaded that there is no reasonable expectation that the superseded policy will be unilaterally reinstated. In the absence of such a reasonable expectation, the plaintiffs' appeal is moot. *American Express Travel Related Service Co.* v. *Mastercard International, Inc.*, 776 F. Sup. 787, 790 (S.D.N.Y. 1991).

The appeal is dismissed.

[4] See footnote 3.

BERDON, J., concurring. I agree that this case is moot and does not come within the "capable of repetition, yet evading review" exception to that doctrine. See *Loisel* v. *Rowe*, 233 Conn. 370, 388–89, 660 A.2d 323 (1995) (*Katz, J.*, dissenting). Accordingly, I concur in the result.